Case number 19-1041. Ms. McClellan for the petitioners, Ms. Kidd-Miller for the respondent. Good morning. So I gather the court clerk has explained to you that although Judge Garland is unable to be on the Zoom this morning, the proceedings are being fully taped. All right, Ms. McClellan, you may proceed. Good morning. My name is Kathleen McClellan on behalf of the petitioner Robin Marcato. May it please the court, the plain language of the Whistleblower Protection Act controls the result in this case. Whistleblowers are often not perfect employees. Ms. Marcato was not a perfect employee. But the question before this court is did Ms. Marcato commit misconduct? The question before this court, the question required by the plain language of the Whistleblower Protection Act is would the agency have taken the same action against Ms. Marcato had she not been a whistleblower? And on that question, the answer is no. The agency has used the Defense Department Inspector General Investigation to mask a straightforward and retaliatory chain of events. A high-level agency official, Catherine Trujillo, with a motive to retaliate against Ms. Marcato, accused Ms. Marcato of misconduct. And those accusations resulted in her termination. 18 months of investigation and a 900-page report do not change those fundamental facts. The administrative judge made two critical errors. First, he misapplied the Whistleblower Protection Act's burden-shifting scheme by requiring that Ms. Marcato show retaliatory motive when the burden should have been completely on the agency. And second, he made findings not supported by the evidentiary record, that the agency had clearly and convincingly proved independent causation for its tainted removal action. And for these reasons, we ask that the AJ's decision be reversed and corrective action ordered under the Whistleblower Protection Act. Ms. McClellan, on your first point, you say that the administrative judge erred because he put the burden on Ms. Marcato, but he described the burden accurately, right? He described the burden as the burden on the agency to show the clear and convincing evidence that supported the agency's action. And he did require that the And what you focus on in your brief is the part of the administrative judge's opinion where he discusses a subsidiary factor in the question about whether the agency would have taken the same action. And you argue that the administrative judge erred by looking to Ms. Marcato for evidence of the motive. But the statute speaks only in terms of whether the agency would have taken the same action. And on that, the administrative judge was clear that the burden was and always was on the agency. So how is it error that he was looking to Ms. Marcato for any further evidence that would persuade him that motive was the reason? It's undisputed that Ms. Marcato proved her prima facie case. And the plain language of the statute requires no further proof from Ms. Marcato. And while I agree with your honor that he was looking for evidence, he ignored substantial evidence of retaliatory motive. But I think the legislative history is instructive here because putting any requiring any additional evidence from Ms. Marcato after she made her prima facie case is there's no support for that in the plain language of the statute. The burden shifts entirely. It's a very you know, it's different from like a McDonnell Douglas burden shifting framework. And Congress actually wrote contributing factor into the prima facie case to overrule case law that had required whistleblowers to demonstrate retaliatory motive. Congress thought it was unrealistic to have whistleblowers have to come forward with that proof. So yeah. But how I'm just trying to understand how your theory works, because correct me if I'm wrong, it seems like what you're saying is that once a whistleblower has prima facie evidence that she is a whistleblower, the what is it the time and and timing, pardon, knowledge, timing, knowledge and timing, right on part of the agency that she's that's her prima facie case. And what does it look like, in your view, for the agency to disprove motive? Because one way of understanding the car factors is that when the agency says, look, we treat other people this way under similar circumstances, and we would have taken the same action in any event, given the nature of her disciplinary infractions, that that is disproving motive. I think that's not necessarily the entirety of the evidence that could be offered to disprove motive. No, but in this case, it might be couldn't it in a case be sufficient as disproof of motive. In other words, car is giving three factors, not every one of which has to be present, not every one of which has to be shown by the employer, proved or disproved by the employer to clear and convincing evidence. But if the bottom line, which is it would have taken the same action is shown by clearing convincing evidence, isn't that under the statute and under car enough? If that were true, that would be enough. But that's very untrue in this case, because there was ample evidence of retaliatory motive. So for him to place the burden on Mercado to produce this evidence, and then not analyze the evidence that existed, amplifies how he wrongly shifted the burden, because the statute doesn't say that she has to produce any evidence of retaliatory motive, the agency has to produce evidence. And I think that there is evidence of a non retaliatory motive that could have been produced. That was not. But I think significantly, in this case, there was ample evidence of a motive to retaliate on the behalf of officials involved in accusing her of misconduct. And you're talking about more or less a cat's paw theory where even if the people who made the ultimate determination were not very tied up in what Mercado describes as the as the retaliatory course of events, they were just putting the cherry on top of a whole series of events that was fraught with retaliation, in her view, and that that's what should have been looked into more, in your view, or accounted for more in the in the AJ's decision? Well, I think it's far more direct than that. Because there's long standing board precedent that when an investigation is closely linked to a personnel action, the board should look to the beginning of the investigation. And the Deputy Inspector General testified that without the Defense Department Inspector General investigation, there would have been no removal. The deciding official in this case wasn't even at the agency at the time of the events in question. The proposing official wasn't her supervisor at the time of the events in question. They didn't witness any of the events in question. They relied entirely on this investigation. So I'm not entirely sure I follow that. When someone has a prima facie case of of retaliation based on whistleblowing, the agency is disabled from doing any investigation? No, the agency is disabled from doing anything to the whistleblower that it would not do absent her whistleblowing. And here, the agency launched an investigation in part because of her whistleblowing. Well, no, they launched an investigation, the way they frame it is they launched an investigation into infractions. And then they thought, okay, well, we're not really going to be seen as neutral here. Because she has claimed whistleblower retaliation for whistleblowing. So instead of doing it in house, we have to send it to Defense OIG. And if if the alternative is not no investigation, but the alternative is an in house investigation, it's hard to see how the Defense OIG investigation is itself that we would properly view that as retaliatory. Because there's not evidence that they would have launched this investigation into her absent her whistleblowing, the link between whistleblowing and personnel actions is exactly what the whistleblower Protection Act was trying to prevent. And the is not supported by the record. Because the reason in the letter requesting the investigation, the reason in the report of investigation is that as she self identified as a whistleblower. No, no, no, no. I mean, if you look at the letter requesting the investigation is here's someone who has disclosed to a target a bunch of information about the investigation. Here's someone who when finds lied to her supervisors. And those are featured in the referral letter. So put aside, let's say the letter said nothing about the whistleblowing. Different case. Yes, if the agency could show that it would have launched the investigation without the by clear and convincing evidence, given the nature of these infractions, whether referring to her as a as a self described whistleblower changes everything, which I understand your theory is that it does. But you know, the the countervailing argument that the government has made is, we should be commended not criticized for sending it off to the defense. I think that it would be commendable if the government had actually you if that were the real reason, but I think that was a pretextual reason because of the agency's conduct during the investigation. And because of the agency's conduct after the investigation, the agency has said whistleblowing has nothing to do with it. But then the agency also sent a letter to the Council for Inspectors General for Integrity and Responsibility to the Council. The, you know, the fact that the agency started this investigation, it made accusations against Ms. Marchetto, it didn't have to start that way. They had a draft letter that characterized the entire investigation is against investigator Giacalone. They didn't send that letter, they chose to accuse Ms. Marchetto of misconduct, after a long history of a motive to retaliate against her. And that motive to retaliate against her was not in the agency's opinion. So the finding that they proved by clearing convincing evidence is not supported by the record. And finally, in trying to decide what the agency would have done, but for the retaliatory motive, isn't it pretty important how serious the misconduct is? That is a factor. But simply proving that the penalty of removal was reasonable for the misconduct would not be enough. But if we thought, if the IJ could reasonably think that when an official in an IJ's office discloses sensitive information about a pending investigation to a target, and the IJ could pretty reasonably think that that is pretty significant infraction. Perhaps, but that's not, I don't think factually what happened here. The person who Ms. Marchetto disclosed information to was not a target, she was a witness, and a former employee. And the name of the target that the agency has claimed is law enforcement sensitive was not marks law enforcement sensitive, and in fact, appears unredacted in the proposed removal letter. So the agency has characterized it as very serious. Do you think the DOD IG had a retaliatory motive? I think that the DOD IG used the letter from the accusations from Mr. Hilo as the basis. Did they have a motive? I understand your theory that that investigation was caused by something that was improperly motivated, and therefore, it's fruit of a poisonous tree, and we just have to ignore it. But the DOD investigators had no, aren't alleged to have had a bad motive, right? And they found that there was serious misconduct. And we use that finding in when you run the clock backwards and ask yourself what would have happened at the beginning of this process, but for the improper motive, could take into account that a neutral party investigated and found that the misconduct was substantial. I don't think the fact that the Defense Department investigation was independent means that it was not pretextual and retaliatory. And that's because the motive behind the referral carries over? Yes, and their evidence- And only because the motive behind the referral carries over. I think also because of the agency's conduct during the investigation, including misrepresenting what the investigation was about, and trying to avoid investigation of whistleblower retaliation. And that's once Congress expressed concern that Ms. Marchetta was being retaliated against, the agency said, well, you know, we've referred the letter that, you know, from Mr. Lawson that accused her of retaliation, we referred that to the Council for Inspectors General, and they said, okay, and then they referred it to DOD. And USAID-OIG omitted in those communications to Congress that they had actually told CIGI that DOD-OIG was investigating reprisal, when that was simply never the case. And I think that that's evidence that the post hoc justifications that we see for the investigation are different from the real motive, which is right there in the letter, which is that as she herself identified as a whistleblower. And so why would her whistleblowing be necessary in referring her for an outside investigation? If there's a causal link between... To explain why state is asking DOD to do its investigations. Right. And I don't think the plain language of the Whistleblower Protection Act allows for that, because the question is, would they have taken the same action? Proving the charges and the nexus and the penalty is not enough. They have to show that they would have acted in the same way. But I think the question then is, is the same way doing an investigation? Or doing an investigation farmed out to Defense-OIG? And I guess the question is, is there any harm to her that the investigation was done by Defense-OIG rather than by USAID-OIG? If it's the referral that you're characterizing as retaliatory, it's just hard to see that any harm flows from that as distinct from saying, doing an investigation of these infractions at all. And if that's the question, then you get back to Judge Katz's point, which is in light of someone's whistleblowing, when there is also evidence of a serious breach of investigative confidentiality, the agency's hands are tied and no investigation by anybody is supposed to take place. That's the difficulty. I think the reason that the referral to the Defense Inspector General is so significant in this case is because the agency has said that it would not have fired her, but for that investigation. But for the results of an investigation into her wrongdoing, right? So I guess, Mike, let me try to get a better handle on your position. Is it your position that in sending it to defense, they should have said, you know, we have some internal potential conflicts of interest, and that's why we're sending it to you instead of saying whistleblowing, and that would have been fine? I think that the agency, if they wanted to discipline Ms. Marchetto, should have treated her the same as non-whistleblowers. Well, we get that at the high level of generality, but if they have somebody who's violating a serious, you know, investigative confidentiality policy, likely, I mean, we have reason to believe they would also have investigated that person without any whistleblowing. And then there's elsewhere you suggest that what they should have done is included the whistleblowing reprisal issue in the referral to defense OIG. Is that your position? No, that's not. Not that they should have included that. It's that their conduct in trying to exclude it demonstrates the pretextual nature. And not just exclude the whistleblowing retaliation from the defense inspector general investigation, but mischaracterizing it based on a complaint from Ms. Marchetto of reprisal. I mean, that's at odds with the whole purpose. The investigation was a complaint from Trujillo about Ms. Marchetto. She was the target. So for them to tell CIGI, oh, the defense IG is already investigating a complaint of reprisal from Marchetto. You should just forward this on over there. That is a manipulative way of avoiding anybody looking at the retaliation issue. I think if the charge was looking so retaliatory, or if the conduct was looking so retaliatory and so potentially retaliatory that they had to refer it to an outside investigation to give it sort of the veneer of legitimacy, I think that's exactly what the plain language of the statute is trying to prevent. That whistleblowing is in one actions or in the other. And if they stay that way, then agencies should be able to clearly and convincingly demonstrate that. And here they did not stay that way. They're linked. And that's why the agency, the AJ's decision is unsupported by the evidence. I see that my time has expired. We'll give you a couple minutes for rebuttal. Thank you. Good morning, Ms. Kidd-Miller. You may proceed. Good morning. May it please the court. I'd like to start at the same place that Ms. Marchetto began, and that is with the plain language of the statute. Under 5 U.S.C. 1221E2, corrective action cannot be ordered if there's a finding, if the agency demonstrates by clear and convincing evidence that it would have taken the same in the absence of such disclosure. The administrative judge found that here, and that finding is supported by substantial evidence. Ms. Marchetto's theory depends on the idea that not only Mr. Ross, the initial supervisor, but also DOD, OIG, and then later the proposing and deciding officials who she herself describes as not even having been involved in the original disclosures or misconduct, that all of them were somehow influenced by others who may have had a retaliatory intent. This isn't just a cat's paw theory. It's more like a whole litter of cats where each has its paw on the next one in the chain. The administrative judge fully considered motive of the different officials involved in the removal decision at pages 724 and 725 of his decision, and the DOD Office of Inspector General portion is extremely important in this case. The administrative judge found, and I quote, no information in the record and no evidence in the record of animus or any retaliatory motive on the part of DOD. Ms. Kidmiller, the A.J. doesn't deal with what seems like potentially the most potent evidence of retaliation, which was by acting Inspector General Mike Carroll back in 2012. He was angry. He raised his voice. He was yelling about Mercado after she made some audit recommendations, and Ross testifies to that effect. I think Deborah Scott maybe also testifies about that. They were present at that meeting. They're the ultimate people acting on this. It was sometime before, but my understanding is that Mercado's theory is that this kind of reaction to her whistleblowing was really what put her in the doghouse, just to mix some metaphors here. Cat's paw in the doghouse. It's somewhat in Mercado's view, it's problematic that the A.J. did not assess the evidence of retaliation stemming from the acting I.G. that was known. The displeasure that was expressed was known to these deciding officials. Your Honor, first, one point of clarification, which I think is clear, but I do just want to clarify. We do have two Mr. Carrolls in the record, so I just want to make sure that's clear that the deciding official who is a Jason Carroll is different than Michael Carroll. I misspoke. It's Deborah Scott. Deborah Scott was present, but the later or higher Carroll, no relation Carroll, wasn't present. Thank you. No, you're right. Yes, Your Honor. I believe that you were clear on that from the question. I just wanted to... I myself was confused about that when I first got the case. I think the important point here is that Michael Carroll had left the agency before the misconduct that was at issue in this case. In fact, it was the later Inspector General, Ms. Carr, was the person who ultimately made the decision to refer to the Department of Defense OIG for investigation. Right. In Mercado's view, sorry to interrupt, just to sort of feed into that, Mercado's view is Trujillo was very much a protege of the first Mr. Carroll, and she remains in the agency, and she remains a mover behind the discipline that ends up resulting in the firing, which is why I use the cat's paw formulation, because I think Mercado's stronger case is, sure, Carroll the first wasn't the one who pulled the trigger, but he worked closely with Trujillo. She helped to build the record and react and respond to the infractions. And so there is a really pretty clear path from retaliation to discharge, and the A.J. doesn't really address that. The A.J. is more formalistic, saying, you know, we have these two officials, they recently arrived, we have a determination by defense, OIG, and that's not tainted by the retaliation. Well, although the he does explicitly discuss Mr. Carroll, who was the deciding official, and the record, the evidence presented to the administrative judge demonstrated that Ms. Trujillo had retired some nine months before the decision to remove Ms. Mercado. Now, as Ms. Mercado points out, Ms. Trujillo was still showed that she was at her home working from Texas, and she was working in the audit division. This is all explained in a declaration that Ms. Trujillo submitted to the administrative judge at page 369 of the record. So she was in a, she wasn't in the management department anymore, which is where Mr. Carroll and Ms. Mercado worked. She was in a different department, different geographic location, working part-time on much lower level projects as the need arose. So in the context of all of that evidence that these, the people whom Ms. Mercado accused of having motive to retaliate had by and large all left the agency. And if you look at page 725 of the administrative judge's decision, he focuses on some testimony from Ms. Mercado. And although he broadly cites just testimony of the appellant, I think the corresponding site here is pages 631 and 632 of the record. And in that part of her testimony, Ms. Mercado was explaining that she didn't, even she did not believe that Ms. Scott and Mr. Carroll, the retaliate against her. Rather, she thought they were quote, influenced by this senior management who was at that point largely gone from the agency. And the administrative judge explicitly found Mr. Carroll's credibility on this issue to outweigh the appellant, whose answers appear to have been speculative. So could the administrative judge have perhaps written us something more the writing of the administrative judge? The point is to make sure that he did the correct analysis. And this analysis on page 75 shows that he did fully consider the motive evidence and focused appropriately on that deciding official who made the decision that is also the focus of the plain language of the statute, the removal. Well, let's talk for, oh, go ahead. Go ahead, Judge Cassis. Sorry. Can I ask about a different aspect of the judge's reasoning, which is it seems a little bit internally inconsistent to the extent that when he was assessing the prima facie case, he said there's some circumstantial evidence of retaliation under this, what is it, time knowledge test. And then when he comes to the defense and asks himself whether the agency would have made the same decision, then obviously those questions are related. He's looking at the extent of the misconduct against the extent of the retaliation. At that point, he says the appellant failed to show the agency's actions were motivated by retaliation. It seems like those two statements are inconsistent. If the second one were true, there would be no prima facie case in the first place. How do we reconcile those? Well, there's no inconsistency there at all. Under the prima facie case and the knowledge timing test, and this is discussed at page 721 of the administrative judge's decision, the point is, as the test implies, is purely the knowledge that Ms. Marcato had made whistleblower disclosures. So at page 721, we see the administrative judge referencing the fact that Mr. Carroll learned about several of Ms. Marcato's disclosures, that Ms. Scott had actual knowledge of the appellant's whistleblower disclosures, and of course, the DOD OIG investigation acknowledged that she was a whistleblower. Right, but it's not knowledge for its own sake. It's knowledge as evidence that a decision, at least in part, was motivated by a bad motive. I disagree that the contributing factor element has anything to do with motive. It's that the decision makers acknowledged... Sorry, I'm using motive as shorthand for a retaliatory intent. Well, and I'm not trying to make a wording point, but a broader point that making the prima facie case of a contributing factor is a relatively low bar. And in this case, where Ms. Marcato herself would often inform her supervisors that she considered herself to be a whistleblower, they knew of that status. I understand that, and it would be perfectly, in my view, it would be perfectly reasonable on this record for the judge to have said, there's some evidence, there's enough to clear the relatively low bar of the prima facie case, and then I have to assess the defense. Would the agency have done the same thing? And there's substantial evidence of serious misconduct, and the retaliatory evidence is relatively attenuated and circumstantial, and therefore, I find by clear and convincing evidence, they would have done the same thing. But he didn't quite say that. He said there was no evidence at the defense stage. He said there was, she failed to prove the agency's actions were motivated by retaliation. Well, so the administrative judge made that statement specifically with regarding the second car factor. But before launching into those car factors, and just as a quick point of background here, the federal circuit and several other circuits at this point have now adopted these same car factors. This court describes those car factors in the 2005 decision COSOLA as a gloss on the statutory requirements of 1221. So it's not necessary that the agency even present evidence on all three car factors, but they are a helpful tool for the court to, the administrative judge and this court in turn to analyze whether the agency would have taken the same action. So the administrative judge very clearly found before analyzing the individual factors that the agency showed by clear and convincing evidence, it would have removed during the absence of disclosure and made that same finding again at the end of his analysis. Now, while he does refer to the appellant's failing to show retaliatory motive, I think that that's more language reacting to the reality of how evidence of typically comes into the record. The agency is trying to prove a negative. No, I understand. And you're sort of answering the burden shifting point, but I'm not sure. I guess I'm just not sure it's internally consistent, but. So on the burden shifting point, your brief says that the AJ's reference to Mercado's failure to retaliatory motive is quote, stray language, close quote. And that was page 21 of your brief. But if you look at the section on retaliatory motive in the opinion, the heading in bold says the appellant has failed to show retaliatory motive. And the first sentence says the appellant has failed to show the agency's actions were motivated by retaliation. So it's hard to stray language. And some of what I hear you say today is a little bit different from brushing it off as stray language. And I guess I'd like to hear more about your view. Is it that I mean, to some extent, it seems like the other car factors are speaking directly to the retaliatory motive question as well. And if you see it that way, then in showing what it would have done anyway, and in showing how it treated other similarly situated people, the agency is showing a lack of retaliatory motive. Is that your theory? Well, I do think it's true that there can be overlap between the car factors, particularly one and two, the strength of the agency's action. This was very serious misconduct, especially lying under oath, for example, to another investigator from another office of inspector general. The administrative judge's language here has to be read in context, of course. And in context, I think it's more of a reaction to the strength of the agency's action for proper motives, and also a reaction to the absence of evidence in the record that there was a retaliatory motive, particularly on the part of deciding official Mr. Carroll. It's very interesting to note that in Whitmore, which is one of the leading federal circuit cases on the car factors, and it's very clear that the burden is clear and convincing evidence for the opinion, where it says federal employees are entitled to rely on circumstantial evidence to prove a motive to retaliate. The federal circuit was quite clear the burden is on the agency, but we see even the federal circuit using the same kind of language that the administrative judge uses here. And I think it's just a reflection of the reality that the agency can put on its evidence for proper motive, which the administrative judge analyzes here, but it's circumstantial evidence that comes from the appellant that if a motive, an improper motive, really is what motivated the agency, it's typically as a reality coming from the appellant. And I think this is probably a reaction. I have to say, I'm sorry, but you've somewhat confused me. Let me just ask you one simple question. Is it your position that the burden is on the agency to show each of the car factors by clear and convincing evidence? No, the burden is on the agency to show by clear and convincing evidence that it would have removed Ms. Marcato even in the absence of her whistleblower disclosures. The car factors are a the agency is not even required to offer evidence as to each of the three car factors. So it's not that the agency has to prove every car factor by clear and convincing evidence. The touchstone is always that question that comes from the statute, whether the agency showed it would have removed Ms. Marcato anyway. So if Ms. Marcato or a plaintiff comes forward with evidence of retaliatory motive and the agency doesn't rebut that evidence directly at all, but powerfully shows that it has other grounds that are strong for firing the person, it might still succeed in establishing that it would have taken action anyway. Yes, Your Honor. And so in this case, if Marcato had had, instead of the inference arising out of timing and knowledge, had had direct evidence of someone saying, you know, we can't have her here. She's, you know, the whistleblowing is distracting us from our mission. And the agency left that on the table, but showed that she seriously violated rules and that her discharge was similar to discharges of other people who had seriously violated rules that could succeed, in your view, under the statute and under Carr. I think it would depend on who was giving that testimony. So if hypothetically, the deciding official here, Mr. Carroll, had made statements that he felt very influenced and pressured to retaliate in his decision, which is the precise opposite of what he testified. But if that had been the testimony, then I think that that would have been a much stronger case for Ms. Marcato. We would have expected to see the administrative judge engaging with and analyzing that evidence in the opinion. Judge Gatsas, anything further? Thank you, Ms. Kidmiller. All right. Well, I think we used up all your time on your opening. But as I said, Ms. McClellan, you can have up to two minutes. You may not take it all, but for your rebuttal. Thank you. I'd just like to point out the discussion of the low burden for Ms. Marcato. That was an intentionally low burden Congress put in, and the agency's burden is high. And for a matter to be proven clearly and convincingly, the administrative judge was supposed to weigh the countervailing evidence. That did not happen here. It wasn't simply Ms. Marcato's testimony. The whistleblower ombudsman from the agency described a culture of retaliation, described a history of retaliation against Ms. Marcato, described that he was pressured to change opinions that he had written against disciplining Ms. Marcato in the past. And that is likewise with Mr. Ross, who's the supervisor. The AJ writes it as though Mr. Ross initiated this action when in fact he testified that he was pressured by Ms. Trujillo, that he felt she was unduly pressuring him, that he felt she had a retaliatory motive, and that he himself was retaliated against for not going along with it. That evidence appears nowhere in the AJ's decision. So to find a matter clearly and convincingly proven without weighing that evidence, that's a finding not supported by the record. Wasn't Ross also, though, one of the recipients of Ms. Marcato's false statements? And he does support the agency that in fact she lied directly to Trujillo and to Ross. I don't view the false statements charge as clear-cut in that way. I think that Mr. Ross's testimony is mixed. I think he says, I don't remember saying that to the defense IG, that he would believe Ms. Marcato over Ms. Trujillo. But I think that what's significant then is that the question is no longer, can the agency prove that it could have removed Ms. Marcato for this misconduct? That's not enough. That it would have. That it would have. That's the standard. And proving that it would have, I think in this case, because it's based on this defense inspector general investigation, includes proving that it would have undertaken this investigation. And none of that, why the investigation was undertaken, that discussion that we had today, appears in the AJ's analysis. So in order to rule for you, do we have to find that in the absence of, or do we have to find that the AJ erred in failing to account for a reality supported in the record that in the absence of a retaliatory motive, even in the face of these infractions, the agency would not have investigated? No, not exactly. And certainly not as a bright line rule. I think it's a fact-dependent question. When you have the deputy inspector general saying, we would not have fired her if this had not been substantiated by the Department of Defense inspector general, then- Or by an investigation. See, that's the- I don't, you know, Your Honor, I think he says, had there been no substantiated findings out of the defense inspector general investigation, that's the- Because that's who did it. But if you accept that it was a matter of course that somebody would have investigated it, then the fact that it may have hinged on her self-identification as a whistleblower, that it went to defense, doesn't, it's just, it feels like it carries more than, it bears more weight than it can to say that that referral was somehow retaliatory because it referenced whistleblowing. And therefore what we should compare it to is a no investigation baseline, as opposed to an in-house investigation baseline, or an investigation by them that said, mentioned some generic conflict of interest rather than whistleblowing. Well, I think it hinges on, the agency has not shown that it would have taken the defense inspector general without, it's the agency's burden to show that they would have done this. Yeah. There's a dearth of evidence that the agency's justifications aren't supported by the written record. And so it's not so much that you have to find that, that they're not allowed to investigate, certainly not, but there's no evidence of what was, what needed to be proved. Ms. Marcato submitted the email, they had it. They said it was self-evident. There's no evidence of why her whistleblowing is even a relevant inclusion in a letter accusing her of misconduct. And I think that that, those facts evince the pretextual nature and then combined with the, AJ's failure to reckon with them. Dr. Katz, do you have any more questions? I'm all set. All right. Thank you both very much. The case is submitted. Thank you.
judges: Garland, Pillard, Katsas